UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MICHAEL JOHNSON,

     Plaintiff,

     v.

HARD ROCK CASINO NORTHERN
INDIANA,

     Defendants.

Case No. 2:23-CV-00312-GSL

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [DE 38] filed by

Defendant, HRNI Holdings, LLC[1], on May 30, 2025.  Plaintiff, Michael Johnson, responded [DE

45] on August 1, 2025, and Defendant filed its reply [DE 50] on September 15, 2025. For the

reasons set forth below, the Court **GRANTS** Defendant's Motion.

## Background

Plaintiff initiated this lawsuit against Defendant, his former employer, on September 20,

2023. [DE 1]. His Amended Complaint [DE 24][2] alleges violations of the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621-634, the Americans with Disability Act, 42 U.S.C.A. §§

2000e-5, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. [DE 24]. More

specifically, he alleges that Defendant discriminated against him by terminating his employment

based on his age, gender, and his association with his disabled son. [*Id*.]. He also alleges that

Defendant discriminated against him by failing to promote him due to his association with his

---

[1] Improperly identified as "Hard Rock Casino Northern Indiana".

[2] By stipulation of the Parties, Plaintiff filed an Amended Complaint against Defendant on December 18,
2024. [DE 23 & 24].

disabled son. [*Id*.]. Defendant filed its Answer [DE 25] to the Amended Complaint on December 31, 2024.  During the following six months, the Parties engaged in discovery. Then, on May 30, 2025, Defendant filed the instant motion.

The Court held a hearing on Defendant's Motion for Summary Judgment on November 12, 2025. [DE 52].  At the hearing, Plaintiff withdrew his claim for age discrimination (Count I). Therefore, the claims that remain are wrongful termination based on Plaintiff's gender (Count II) and his association with his disabled son (Count IV). Plaintiff's failure to promote claim (Count III) also remains pending.

*Undisputed Facts*

Plaintiff is a male. [DE 40 at ¶ 1]; [DE 40-2 at pg. 5].  He has sole legal, medical, and physical custody of his minor son who suffers from hemophilia and an intellectual disability. [DE 40 at ¶ 2].

As of April 18, 2021, Plaintiff was employed by Defendant as a Cage Supervisor. [DE 40 at ¶ 3].  Cage Supervisors report to a Cage Shift Manager. [*Id*. at ¶ 6]. The Cage Shift Manager reports to the Cage Manager, who at all relevant times, was Somchai "Scott" Tang. [*Id*.]. Tang reported to Patricia Chambers, Director of Cash Operations, who began her employment with Defendant in August of 2021. [*Id*. at ¶ 7]. A month prior, in July 2021, Plaintiff applied for a vacant Cage Shift Manager position. [*Id*. at ¶ 9].

After beginning her employment in August 2021, Chambers held one-on-one meetings with each cage supervisor, including Plaintiff. [DE 40 at ¶ 12].  The purpose of these meetings was for Chambers to get to know the staff members and their work experience. [*Id*. at ¶ 13].  On August 28, 2021, Chambers met with Plaintiff. [DE 46 at ¶ 14]. The two discussed Plaintiff's application for Case Shift Manager, his work experience, and his son. [DE 40 at ¶ 14]; [DE 46 at ¶ 14]. At the

meeting, "[Plaintiff] volunteered [to Chambers] that he had a son at home with special needs." [DE 46 at ¶ 14][3]. Chambers then asked Plaintiff if he would be able to perform the duties of the Cage Shift Manager position without it impacting his responsibilities of caring for his son. [*Id.*].

Beginning on March 8, 2022, and continuing through the end of his employment, Plaintiff was on approved intermittent FMLA leave to care for his son. [DE 40 at ¶ 17]. On March 21, 2022, Plaintiff submitted a notice of his resignation to Defendant, with a requested effective date of April 26, 2022. [*Id.* at 18-19].

On March 26, 2022, Chambers received a report that Plaintiff was organizing a mass call-off among hourly employees. [DE 40 at ¶ 20]. After learning of the report, Chambers investigated the allegation. [DE 46 at ¶ 21]. On March 29, 2022, Chambers and Tang met with Plaintiff and informed him that his employment with Defendant had concluded. [*Id.* at 23].

### Legal Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the relevant substantive law, it is outcome determinative. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient

---

[3] For purposes of this motion only, Defendant "has accepted [Plaintiff's] version of his conversation with Ms. Chambers. [Defendant] does not concede [that] this is the accurate version of their conversation for any purpose outside [of this] Motion." [DE 40 at pg. 3, n. 1].

3

to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

**Discussion**

## I. Wrongful Termination Claims

Plaintiff alleges that Defendant discriminated against him by terminating him due to his gender and his association with his disabled son. Title VII of the Civil Rights Act of 1964 prohibits gender discrimination in employment. 42 U.S.C. § 200e-2(a). Under the *McDonnell Douglas* framework, to succeed on a Title VII discrimination claim, Plaintiff has the burden to establish a *prima facie* case of discrimination by showing that 1) he is a member of a protected class, 2) he was meeting his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) similarly situated employees who were not members of his protected class were treated more favorably. *Anderson v. Streer*, 104 F.4th 646, 652 (7th Cir. 2024) (referencing the burden-shifting framework for employment discrimination cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

A somewhat modified version of the *McDonnell Douglas* framework is to be used in cases of associational disability discrimination. *See Larimer v. IBM Corp.*, 370 F.3d 698, 701-02 (7th Cir. 2004). The elements include that Plaintiff (1) was qualified for the job at the time of the adverse employment action; (2) he was subjected to an adverse employment action; (3) he was known by his employer at the time to have a relative or associate with a disability; and (4) his case falls into one of the three relevant categories of expense, distraction, or association. *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336–37 (7th Cir. 2012).

4

If Plaintiff successfully establishes a prima facie case for discrimination under either framework, then the burden shifts to Defendant to "articulate[] a legitimate, nondiscriminatory reason for the adverse employment decision." *Id.* at 653 (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). The burden then shifts back to Plaintiff[4] to demonstrate that Defendant's stated reason for firing him was pretextual. *Id.* That final burden "requires demonstration by a preponderance of the evidence that [Defendant's] stated reasons for [Plaintiff's] firing were *false*, not that they were unfair or baseless." *Id.* Put more succinctly, the question in wrongful termination cases "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Reives v. Illinois State Police*, 29 F.4th 887, 892 (7th Cir. 2022) (holding that "*McDonnell Douglas* is entirely consistent with … *Ortiz*[,] and it remains an efficient way to organize, present, and assess evidence in discrimination cases") (internal quotations and citations omitted).

### A. Termination Based on Gender

Defendant has not disputed that Plaintiff, being male, is a member of a protected class. Therefore, the Court will accept that element as proven. Moving on to the element of adverse employment action: such an action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1062 (N.D. Ill. 2018). "For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, [or] failing to promote … *Lewis v. City of*

---

[4] The Court notes that Plaintiff does argue that he does not need to embrace a burden-shifting framework to prove associational discrimination for his failure to promote claim, but he has not argued the same regarding his wrongful termination claims.

*Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) "A resignation is actionable as an adverse employment action only if the resignation qualifies as a constructive discharge." *Norwood v. East Allen County Schools*, 2018 WL 4680008, at \*11 (N.D. Ind. Sept. 28, 2018). A "constructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into involuntary resignation." *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009); *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

The evidence before the Court is that Plaintiff, for reasons unknown to the Court, decided to resign from working for Defendant. [DE 46 at ¶ 18]. As a result, he tendered a letter of resignation to Defendant on March 21, 2022. [*Id.*]  In doing so, Defendant requested that his last day of work to be April 26, 2022. [*Id.* at ¶ 19]. On March 26, 2022, between the tendering of his notice of resignation and his final date employed, the undisputed evidence shows that Chambers received a report that Plaintiff was organizing a mass call-off among Defendant's hourly employees. [*Id.* at ¶ 20]. It is also undisputed that on March 29, 2022, Chambers, Tang, and Plaintiff met. [*Id.* at ¶ 23]. The disputed part of the events giving rise to this lawsuit is what occurred during that meeting. Plaintiff claims he was informed he was terminated, but Defendant claims that Plaintiff's previously tendered resignation was made effective at that point. [*Id.* at ¶ 23]. There are no other allegations surrounding what occurred at this meeting or what exactly prompted it.

Defendant argues that since Plaintiff's resignation was accepted and effective immediately, during the meeting, he did not suffer an adverse employment action. Plaintiff, on the other hand, claims that he was told he was terminated during the meeting and the fact that he previously tendered a notice of resignation is immaterial because he "do[es not] know if [he] would have

actually resigned on [April 26, 2022]" the date he requested that his resignation be made effective. [DE 45 at 12].

Given the facts that Plaintiff tendered a notice of resignation with a future effective date; a subsequent report was made alleging that Plaintiff was organizing a call off; and, there was a meeting held three days later between Plaintiff and his supervisor that concluded with his employment ending, a reasonable fact finder could conclude that Defendant communicated to Plaintiff that he was terminated based on the reported call off, causing Plaintiff to suffer an adverse employment action.

While the next element of the *McDonnell Douglas* framework is to determine whether Plaintiff was meeting his employer's legitimate expectations, the Court will reserve analysis on this issue because Plaintiff has not shown that similarly situated employees who were not members of his protected class were treated more favorably, causing this claim to fail entirely. The Court understands that a plaintiff need not identify an employee that is "identical in every conceivable way" but the identified employee "must be directly comparable to the plaintiff in all material respects." *Reives,* 29 F.4th at 892 (cleaned up). At a minimum, Plaintiff "must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct." *Anderson v. Street*, 104 F.4th 646, 653 (7th Cir. 2024). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Igasaki*, 988 F.3d at 958.

Plaintiff has identified two female employees, Monica Chavez and Melissa Haskins, who he alleges were similarly situated but that Defendant treated more favorably. [DE 46 at ¶ 30]. Chavez and Haskins held positions as Bankers, which is an hourly position. [DE 40 at ¶ 5]; [DE

39 at 8]. Plaintiff, at all relevant times, was a Cage Supervisor who was responsible for the daily supervision of cash operations, which included directly overseeing Bankers, Chavez and Haskins. [DE 40 at ¶¶ 3-5]. Plaintiff, on the other hand, was supervised by the Cage Shift Manager, Tang. [*Id*. at ¶ 6].

Plaintiff attempts to reconcile this stark difference by claiming that Tang and Chambers, pursuant to Defendant's Leave Policy, were tasked with the decision to grant or deny personal leave for all employees including Chavez, Haskins, and himself. [DE 45 at ¶ 16]. And, allegedly, Plaintiff was denied personal leave in January 2022, when "the female employees who had no known association with individuals with a disability, … requested time off and each of their requests were granted." [DE 45 at 16]. As an initial matter, this allegation is not substantiated by any evidence in the record. Next, the Personal Leave Policy is never mentioned in Plaintiff's Complaint. Therefore, the conduct of two female employees being permitted personal leave and Plaintiff's alleged conduct of organizing a call off is not comparable. The facts are undisputed that Chavez and Haskins were employed in entirely different roles than Plaintiff with different obligations, expectations, and supervisors. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (explaining that "we have previously held that ordinarily, it will not be the case that a plaintiff is similarly situated to another employee when the plaintiff is subordinate to that employee"). For these reasons, Plaintiff's claim that he was terminated due to his gender (Count IV) fails as a matter of law.

### B. Termination Based on Association

Count II of Plaintiff's Amended Complaint alleges that Defendant terminated him because of his association with his disabled son. [DE 24 at ¶ 22]. As mentioned above, a somewhat modified version of the *McDonnell Douglas* framework is used in cases of associational disability

8

discrimination. *See Larimer*, 370 F.3d at 701-02. The Court has already determined that there is sufficient evidence in the record to find that Plaintiff was subjected to an adverse employment action. Additionally, Defendant does not appear to be disputing the fact that Chambers was aware that Plaintiff had a disabled son. This leaves the Court with determining whether Plaintiff has met the elements of being qualified for the job at the time of the adverse employment action and whether his claim falls into one of three relevant categories of expense, distraction, or association. *See Larimer*, 370 F.3d at 701-02. Since Plaintiff's case does not fall into one of the three relevant categories, as discussed below, the Court again need not address whether he was qualified for the job at all relevant times.

In *Larimer*, the Seventh Circuit recognized three categories under which association disability discrimination cases generally fall: expense, disability by association, and distraction. 370 F.3d at 700. Facts that would fall within the "expense" category would be "an employee is fired (or suffers some other adverse personnel action) because … his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan[.]" *Id*. An example of "disability by association" would be "one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well." *Id*. Finally, facts giving rise to a case based on a "distraction" theory are when "the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention." *Id*.

Plaintiff argues that the facts giving rise to the instant claim fall under the distraction category. [DE 45 at 13]. His argument is based on two undisputed facts. During a meeting between Plaintiff and Chambers, in August 2021, seven months before Plaintiff's alleged termination, he "volunteered that he had a son at home with special needs." [DE 46 at ¶ 14]. Plaintiff claims that

Chambers then asked him if "he would be able to perform the duties of Cage Shift Manager and have it not take time away from the responsibilities of taking care of his son." [*Id*]; [DE 40 at ¶ 14, n. 1] (stating that "for purposes of [the instant motion] only, [Defendant] has accepted [Plaintiff's] version of his conversation with [] Chambers"). The alleged adverse employment action in Count II is Defendant's termination of Plaintiff as Cage Supervisor. An inquiry about his ability to perform the wholly different job of Cage Shift Manager, is irrelevant for purposes of this claim.

Plaintiff's argument as to this element of Count II, termination due to his association with his disabled son, is bare. Plaintiff claims that "a jury can infer discriminatory intent" based on Chamber's question at the August 2022 meeting and his subsequent termination. [DE 45 at 13]. An unsupported statement that Chamber's had "discriminatory intent" is not enough to support a claim under a "distraction" theory for discrimination based on disability association. *See Larimer*, 370 F.3d at 701 (holding that "there is no evidence that [the plaintiff] was absent or distracted at work because of his wife's pregnancy or the birth and hospitalization of his daughters"). For these reasons, Count II of the Amended Complaint fails as a matter of law.

## II. Failure to Promote

Count III of the Amended Complaint alleges that Defendant violated the ADA by failing to promote Plaintiff due to his association with his disabled son. [DE 24 at ¶24]. To proceed to trial on a failure to promote claim, "a plaintiff either must produce sufficient direct or circumstantial evidence that [the employer's] promotion decisions were intentionally discriminatory or make an indirect case of discrimination under the burden-shifting method of *McDonnell Douglas." Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 891 (7th Cir. 2016). In doing so, a plaintiff "must first produce evidence of a *prima facie* case for failure to promote; if []he does so, [the defendant] must then produce evidence of a legitimate nondiscriminatory reason for the

employment action; if the [defendant] produces evidence of a legitimate reason, the plaintiff must then produce evidence that the [defendant's] stated reason is a pretext." *Id*.

To demonstrate a prima facie case for failure to promote under Title VII, the plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the defendant promoted someone outside of the protected group who was not better qualified for the position that he sought. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016).

The Court need not analyze the first two elements of this claim because the record is clear, and undisputed, that Plaintiff was not rejected for the position of Cage Shift Manager by way of the fact that no one was ever hired to fill the position, which further results in Plaintiff's inability to satisfy the final element of this claim, showing that Defendant *promoted* someone outside of the protected group who was not better qualified. [DE 45 at 7]; [DE 46 at ¶ 16].  For, the Seventh Circuit held in *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 673 (7th Cir. 2009), if "**no employee is promoted** during the relevant time period, a failure-to-promote claim must fail because the claimant cannot argue that he was treated differently than anyone else." (emphasis added); *see also Sarver v. Staples the Off. Superstore E., Inc.*, 2014 WL 1571221, at *5 (S.D. Ind. Apr. 17, 2014) (holding that Plaintiff "ha[d] not shown a prima facie case of employment discrimination for [defendant's] failure to promote her [because] … [defendant] eliminated that position[,] … [and] the lack of an opening is always a legitimate reason for refusing to promote") (internal quotations omitted).

The Court notes that Plaintiff does argue, however, that he does not need to embrace the burden shifting framework to prove this claim. [DE 45 at 3-4].  He relies on *Ortiz* in support by arguing that the question here is whether he offered sufficient evidence to show that his association

11

with his disabled son is what caused Defendant not to promote him. [*Id*. at 4]. However, Plaintiff's only evidence to support this is Chamber's question during the August 2022 meeting. Irrespective of whether the burden-shifting framework of *McDonnell Douglas* is used or the standard from *Ortiz* is employed, Plaintiff still has to come forward with sufficient evidence to support each of the elements of his claim and he admitted that no one else was hired, or promoted, in place of him as Cage Shift Manager. *See* [DE 45 at 7]; see also *Rogers v. Anderson*, 2025 WL 2613453, at *2 (N.D. Ind. Sept. 9, 2025) (explaining that in order "[t]o defeat a motion for summary judgment, the non-moving party … must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial"). Accordingly, Count III of the Amended Complaint fails as a matter of law.

## CONCLUSION

The Court hereby **GRANTS** Defendant's Motion for Summary Judgment [DE 38]. The Court **DIRECTS** the Clerk of Court to enter judgment against Plaintiff and in favor of Defendants. Plaintiff takes nothing by his Complaint.

SO ORDERED.

ENTERED: March 26, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court

12